# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BARBARA G. DEAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-18-368-SPS |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Barbara G. Dean requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-two years old at the time of the administrative hearing (Tr. 36, 171). She has an eighth-grade education and no past relevant work (Tr. 44, 63). The claimant alleges that she has been unable to work since December 31, 2000, due to depression; bipolar disorder; paranoia; anxiety; diabetes; nerve damage and loss of feeling in her hands, legs, and feet; hormone problems; limited mobility of her left arm, elbow, and hand; low back, left knee, bilateral foot, and abdominal pain; insomnia; vision problems; and high blood pressure (Tr. 192-93).

## Procedural History

On June 16, 2015, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Jana Kinkade conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 19, 2017 (Tr. 15-30). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1581.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform light work as defined

in 20 C.F.R. § 416.967(b), except that she could only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, and could never climb ropes, ladders, or scaffolds. Additionally, the ALJ found the claimant must avoid exposure to extreme heat, unprotected heights, and unguarded moving machinery. Finally, the ALJ limited the claimant to performing simple, routine tasks and simple decision making in an environment that involves few, if any, workplace changes and only limited to occasional interaction with supervisors, coworkers and the public (Tr. 54). The ALJ then concluded that although the claimant had no past relevant work, she was nevertheless not disabled because there was work that she could perform in the regional and national economies, *e. g.*, assembler, hand packager, and electronics worker (Tr. 29-30).

## Review

The claimant contends that the ALJ erred by failing to: (i) identify jobs she could perform in light of the assigned RFC, and (ii) properly evaluate her subjective statements. Neither of these contentions have merit, and the decision of the Commissioner is therefore affirmed.

The ALJ found that the claimant had the severe impairments of degenerative disc disease of the lumbar spine, osteoarthritis of the left knee, hypertension, diabetes mellitus, obesity, mood disorder, and anxiety disorder, but that her substance abuse disorder, posttraumatic stress disorder ("PTSD"), and antisocial personality disorder were nonsevere (Tr. 17-23). The medical evidence relevant to this appeal reflects that physician assistant David Fisher treated the claimant for, *inter alia,* left knee pain, dysthymic disorder, arthropathy of multiple sites, and/or chronic low back pain from October 2014 through

February 2015 (Tr. 316-26). The claimant's mental status and physical examinations at these appointments were normal, but Mr. Fisher did often note tenderness to palpation in her left knee, left elbow, and/or paraspinal muscle region (Tr. 317-26). X-rays of the claimant's left knee taken on December 16, 2014, revealed osteoarthritis in the medial femorotibial and patellofemoral joints and possible mild chondrocalcinosis and small amount of gas in the medial femorotibial joint (Tr. 312). An x-ray of the claimant's lumbar spine taken the same day revealed mild degenerative disc disease at L5-S1, partial sacralization of L5 on the left, and lower lumbar facet hypertrophy (Tr. 311). X-rays of the claimant's left elbow and right knee were normal (Tr. 310, 313).

On October 6, 2015, Kathleen Ward, Ph.D. performed a consultative mental status examination of the claimant (Tr. 337-41). Dr. Ward noted the claimant was sullen, resistant, angry, and very uncooperative and that she remained angry and agitated throughout the interview (Tr. 338-39). She estimated the claimant's intellectual ability to be within the lower ranges and indicated that she had deficits in social judgment and problem solving (Tr. 339). She assessed the claimant with alcohol use disorder, opioid use disorder, other/unknown use disorder, PTSD, major depressive disorder (recurrent, severe with psychotic features), and antisocial personality disorder (Tr. 340).

Dr. Chris Sudduth performed a consultative physical examination of the claimant on December 12, 2015 (Tr. 344-50). Dr. Sudduth found full range of motion in the claimant's knees with significant pain on assessment, full range of motion in her lumbar spine with pain, and mild decreased range of motion in her lumbar spine with pain (Tr. 350). He also noted the claimant had a safe and stable gait with appropriate speed,

weak heel and toe walking, a normal tandem gait, and negative straight leg raise tests (Tr. 350). Dr. Sudduth indicated that the claimant had moderate impairment and inability to work in any job that required heavy lifting or significant physical exertion (Tr. 350).

On April 6, 2016, the claimant presented to nurse practitioner Ellen Huffmaster for a medication evaluation (Tr. 354-56). The claimant reported that she was very depressed and began self-isolating in the previous month (Tr. 354). Ms. Huffmaster indicated, *inter alia,* that the claimant had impaired judgment, poor insight, intact recent memory, and fair remote memory and concentration (Tr. 355). She diagnosed the claimant with schizophrenia (paranoid type) and major depressive disorder (recurrent, severe). A discharge summary from Carl Albert Community Mental Health Center ("CACMHC") dated January 20, 2017, indicates the claimant was initially compliant with treatment, but soon missed several scheduled appointments, could not be reached, and was discharged that day (Tr. 389). The claimant returned to CACMHC on September 7, 2017, and an interim treatment plan was established, but there are no further treatment notes in the record (Tr. 393-94).

Various providers at Atoka Medical Clinic treated the claimant for, *inter alia,* chronic low back pain and anxiety between April 2016 and February 2017 (Tr. 359-80). On physical examination, providers consistently found the claimant had tenderness in her lumbar spine and left knee, but a normal gait (Tr. 364, 367, 370, 373, 376, 379). The claimant's mental status examinations were normal but were not conducted at every appointment (Tr. 364, 367, 370).

At the administrative hearing, the claimant testified that she takes pain medication for the pain in her low back and knees but is never pain free (Tr. 50). She indicated her low back pain intermittently radiates down her left leg and that her left knee is always swollen and "locks up" if she does not wear a knee brace (Tr. 51-52). The claimant further indicated that she experiences nerve pain in her legs and arms and tingling or numbness in her hands every day due to her diabetes (Tr. 54). The claimant also indicated that she experiences daily, intermittent dizziness and headaches due to her high blood pressure (Tr. 56). As to specific limitations, the claimant testified that she could not pick up small objects, turn a doorknob, twist a cap off a two-liter bottle, sit/stand for more than five or ten minutes, walk more than a block, lift a gallon of milk, or squat (Tr. 57-58). Regarding her mental impairments, the claimant indicated that she has difficulty carrying on a conversation and watching television because she is unable to stay focused, and has trouble reading a newspaper because she has problems "putting things together and understanding what they mean." (Tr. 48-49, 61).

The ALJ also elicited testimony from a vocational expert ("VE") to determine if there were jobs the claimant could perform with her limitations (Tr. 62-66). The ALJ posited, *inter alia*, a hypothetical in which an individual with the age, education, and work history of the claimant who:

> . . . remains able to lift and/or carry no more than 20 pounds occasionally and 10 pounds frequently. The person could stand and/or walk for six hours and sit for six hours in an eight-hour workday with normal breaks. The person could occasionally climb ramps and stair, but could never climb ladders, ropes, or scaffolds. The person would need to avoid exposure to extremes of heat and to hazards such as unprotected heights and unguarded moving machinery. The person would be limited mentally to performing simple,

> routine tasks and simple decision-making in an environment that involves few if any workplace changes. Interaction with supervisors, coworkers, and the public would be limited to occasional.

(Tr. 64). The VE identified three light jobs such a person could perform: (i) small products assembler, DICOT § 706.684-022; (ii) hand packager, DICOT § 559.687-074; and (iii) electronics worker, DICOT § 726.687-010 (Tr. 63-65). The ALJ determined that the claimant's RFC included the limitations from the hypothetical posed to the VE set forth above and she adopted the VE's testimony that the claimant could perform the jobs of assembler, hand packager, and electronics worker (Tr. 25, 29).

The claimant first asserts that the ALJ erred in identifying jobs she could perform because there was a conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. Although the VE did not identify any conflict between her testimony and the DOT, the claimant contends there is a conflict regarding the reasoning levels of each of the jobs identified. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may

rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

In this case, all three identified jobs have a reasoning level of two. *See* DICOT §§ 706.684-022, 559.687-074, 726.687-010. A reasoning level of two requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." *Id*. The reasoning levels for jobs in the DOT best identify the level of simplicity (or, conversely, complexity) associated with the job. *See Cooper v. Barnhart*, 2004 WL 2381515, at *4 (N.D. Okla. Oct. 15, 2004) ("The reasoning level, as identified by Plaintiff, appears more similar to whether or not a claimant has a limitation to performing only simple tasks.") [citations omitted]. The claimant specifically asserts that a reasoning level of two is incompatible with simple and routine tasks. The Court agrees with the Commissioner, however, that a reasoning level of two *is consistent* with performing simple and routine tasks, although a reasoning level of three is not, and that other courts have reached the same conclusion. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) ("This level-two reasoning appears more consistent with Plaintiff's RFC [limiting her to simple and routine work tasks.]"); *Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) ("Ms. Stokes' second argument is that the ALJ's limitation to simple, repetitive and routine work should be construed as a limitation to jobs with a reasoning-level rating of one. We disagree."). *See also Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. March 13, 2017) ("In accordance with the court's findings in *Hackett*, a restriction to simple work is consistent with this reasoning level [of 2].");

*Goleman v. Colvin*, 2016 WL 3556958, at *4 (W.D. Okla. May 6, 2016) (where RFC limited claimant to "simple, routine, repetitive instructions," [t]he ALJ properly relied on the jobs identified by the VE with a reasoning level of two.").

The claimant also contends that the ALJ erred in assessing her subjective statements for consistency because the ALJ made no specific findings and failed to properly account for her impairments, despite medical evidence showing a nexus between her impairments and her subjective allegations. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3] Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012), citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[4] As part of the

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[4] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). This Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

In discussing the claimant's subjective symptoms, the ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . ." (Tr. 26). In making such conclusion, the ALJ noted several inconsistencies between the claimant's subjective statements of pain and the medical and other evidence of record, including: (i) the only x-rays were more than three years old and showed minimal findings, (ii) physical examinations showed a normal gait and no motor or sensory

deficits, (iii) Dr. Sudduth's consultative examination was essentially normal, (iv) treatment consisted of medication apart from a single steroid injection in the claimant's left knee, (v) there was no evidence that surgery was recommended or that a knee brace was prescribed, (vi) compliance with mental health treatment was poor, (vii) the claimant returned to mental health treatment the month before her administrative hearing, and (viii) she functioned adequately at the consultative examination with Dr. Sudduth (Tr. 26-27).  Thus, the ALJ linked her subjective statement analysis to the evidence and provided specific reasons for the determination.  There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and her evaluation of the claimant's subjective statements is therefore entitled to deference.  *See Casias*, 933 F.2d at 801.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence.  The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 2nd day of September, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**